UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE P&G HEALTH & LONGTERM
DISABILITY PLAN,

        Plaintiff,

   v.

MICHAEL HANCOCK,

        Defendant.

Case No. 1:25-cv-61

JUDGE DOUGLAS R. COLE

# OPINION AND ORDER

Plaintiff P&G Health & Longterm Disability Plan (the Plan) sued Defendant Michael Hancock seeking recovery of amounts that the Plan alleges that it overpaid Hancock in connection with a disability. (Compl., Doc. 1, #3). Specifically, under Plan terms, the Plan is entitled to offset any Social Security disability payments that Hancock receives from amounts that would otherwise be due from the Plan. (*Id.* at #2). According to the Complaint, Hancock owes the plan $76,268.61 as a result. (*Id.* at #3). The Plan served Hancock, (Doc. 9), but he has declined to answer or otherwise defend himself. Accordingly, the Clerk entered default, (Doc. 11), and the Plan now moves for default judgment, (Doc. 12). For the reasons briefly described below, the Court **GRANTS** the motion and enters judgment against Hancock in the amount of $76,727.12 plus post-judgment interest.

## BACKGROUND[1]

Hancock worked for Procter & Gamble in the company's Albany, Georgia, plant. (Doc. 1, #2). On December 7, 2018, he applied for disability benefits under the Plan. (*Id.*). The Plan's terms required Hancock also to apply for Social Security disability benefits, which he did. (*Id.* at #2–3). To the extent that he received such payments, the Plan was entitled to offset those amounts against disability payments that otherwise would be due under the plan. (*Id.* at #2).

The Plan approved Hancock's application for disability benefits. (*Id.*). Between March 1, 2019, and March 27, 2022, Hancock received $78,969.56 in plan benefits over that 37-month period, or approximately $2134.31 per month. (*Id.*).

On January 21, 2020, the Social Security Administration awarded Hancock disability benefits in the amount of $2,231,00 per month, retroactive to September 26, 2018. (*Id.* at #3). That means that, for the entire period that Hancock received monthly payments under the Plan, he also received Social Security disability benefits, either from retroactive benefits or ongoing payments. And the amount of the Social Security disability benefits exceeded the payments under the Plan.

As a result, the entirety of the Plan's payments constituted "overpayment[s]" that the Plan's terms required Hancock to repay. (*Id.* at #3). To date, Hancock has repaid $2,700.95, which leaves a balance of $76,268.61. (*Id.*).

---

[1] When considering a motion for default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *See Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021). So the Court's summary of the factual background rests on the allegations in the Plan's Complaint (Doc. 1).

2

On February 5, 2025, the Plan sued Hancock for claims under ERISA and pendent state law claims, seeking recovery of the unpaid reimbursement amount. (*See generally id.*). After an attempt at service that fell short of what this Court's rules require, (see 6/17/25 Not. Order), the Plan properly served Hancock on July 14, 2025, (Doc. 9). Hancock failed to answer or otherwise plead in response to the Complaint. So the Clerk entered default on August 27, 2025. (Doc. 11).

On September 18, 2025, the Plan moved for default judgment. (Doc. 12). There, it provides an affidavit attesting to the veracity of an attached statement of Hancock's Plan account, (*id.* at #58), along with that account statement, (*id.* at #59). The affidavit also avers, (*id.* at #58), with an accompanying itemized listing, (*id.* at #60), that the Plan expended some $458.51 in taxable costs in prosecuting this action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides a two-step procedure for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* And at that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021) (cleaned up); *see also* Fed. R. Civ. P. 8(b)(6). Next, unless the claim "is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) (Table) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Said differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (quotation omitted).

After confirming there is jurisdiction and a plausible claim, a court then "must conduct an inquiry" to establish the appropriate damages. *Beaver*, 2021 WL 1084610, at *2 (cleaned up). To do that, the court may either hold an evidentiary hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (cleaned up).

## LAW AND ANALYSIS

To begin, the Court concludes that the Plan has satisfied Federal Rule of Civil Procedure 55(a)'s requirement for a default. Hancock failed to plead or otherwise defend this action despite the Plan properly serving him. (Docs. 6, 8, 9). Beyond that,

4

the Plan's claim is arguably for a sum certain, so the Court perhaps need not proceed further in the analysis. Out of an abundance of caution, though, the Court elects to do so. Based on that analysis, the Court concludes that the Plan is entitled to default judgment under Rule 55(b)(2).

**A.     The Court Has Jurisdiction Over This Matter.**

Jurisdiction poses no hurdles for the Plan. Start with subject-matter jurisdiction. The Plan asserts two claims under ERISA—a federal law—which means the Court has federal question jurisdiction over those claims. 28 U.S.C. § 1331. (Doc. 1, #1, 4–5). Indeed, federal courts have exclusive jurisdiction over ERISA claims like those here. *See* 29 U.S.C. § 1132(e)(1). And the Court will exercise supplemental jurisdiction over the Plan's related state-law claims. *See* 28 U.S.C. § 1367(a).

Turn then to personal jurisdiction. ERISA creates nationwide jurisdiction over, inter alia, plan participants, 29 U.S.C. § 1132(e)(2), which is constitutional so long as the plan participant has minimum contacts with the United States, *see Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 566–67 (6th Cir. 2001). That same statute also provides that venue is proper in the "district court where the plan is administered." 28 U.S.C. § 1132(e)(2). Here, the Complaint alleges, and Hancock is thus deemed to have admitted, that Hancock was employed in Georgia, which takes care of the minimum contacts with the United States part. (Doc. 1, #2). And the Complaint further alleges that the Plan is administered in Ohio, which means that the case can proceed here. (*Id.* at #1–2). In short, the Court has personal jurisdiction over Hancock.

5

**B.     The Plan Plausibly Alleged Reimbursable Overpayments to Hancock.**

Satisfied that the Court has jurisdiction to consider the Plan's claims, the Court next determines whether the Plan has stated a claim for relief against Hancock. It has.

The Plan's Summary Plan Description specifically provides that the Plan "will reduce the disability income benefits that you are otherwise entitled to under the Plan if you receive SSDI benefits with respect to the same Disability for which you are otherwise entitled to benefits under the Plan." (Doc. 1-2, #20). The Plan Description further provides that, if a participant receives such payments from Social Security, the Plan has a right to reimbursement in that amount. (*Id.* at #21–22). Against that backdrop, the Complaint alleges, and Hancock is thus deemed to have admitted, that Hancock received Social Security benefits as a result of the same disability for which he received disability payments under the Plan. (Doc. 1, #2–3). So Hancock was required to reimburse the Plan under the Plan's own terms. Yet, the Complaint says he failed to do so.

That means the Plan states a claim for relief, and that claim arises both as a matter of ERISA and common law (e.g., contract). (*Id.* at #3–5).

**C.     The Plan Is Entitled to Damages and Costs.**

Given that the Plan has stated plausible claims under ERISA and Ohio law, the Court turns to damages. That is straightforward. The affidavit attached to the motion for default judgment states that Hancock received disability payments from Social Security that gave rise to a right to reimbursement in the Plan's favor of

$78,969.56. (Doc. 12, #57). That same affidavit further provides that Hancock has reimbursed the Plan $2,700.95. (*Id.* at #58–59). That leaves a balance due of $76,268.61. (*Id.* at #57, 59). And beyond that, as a prevailing party, the Plan is entitled to reimbursement for costs. Here, the Plan requests costs in the amount of $458.51. (*Id.* at #58, 60). Given those costs were reasonable and necessary to the litigation, the Court will allow them.

Accordingly, the Court enters judgment in the amount of $76,727.12 (the sum of $76,268.61 and $458.51).

## CONCLUSION

For reasons explained, the Court **GRANTS** the Plan's Motion for Default Judgment (Doc. 12). To that end, the Court **ORDERS** the Clerk to enter judgment against Hancock in the amount of $76,727.12, plus post-judgment interest, and to **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

October 17, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**